24 So.2d 378

**WILLIS v. WILLIS.**

**No. 37760.**

Dec. 10, 1945.

Truett L. Scarborough, of Ruston, for appellant.

McBride & Goff, of Ruston, Harvey G. Fields, of Farmerville, and A. K. Goff, Jr., of Ruston, for appellee.

HAMITER, Justice.

Alleging that his wife, Mrs. Nona Parkman Willis, abandoned him during the month of September, 1944, John T. Willis instituted this action against her on October 14, 1944. In it he prayed for a judgment of separation "a mensa et thoro" and, further, that he be awarded the permanent care, custody and control of their minor child, Mary Emma Willis, then ten years of age.

Answering, defendant admitted the abandonment, declaring that "she left her said husband because living with him as his wife, due to his conduct to her, had made life unbearable"; and she asked that the demands of plaintiff be allowed only insofar as he sought the decree of separation. In reconvention, she prayed that she be granted the permanent care, custody and control of the minor child; that she have judgment against plaintiff for alimony of $35 per month for the support of the child; and that she recover further judgment against him in the amount of $200.45, representing attorney's fees and court costs incurred in this suit and also in a previous separation action, dismissed as of nonsuit, which she had brought against her husband (apparently after the abandonment) charging him with cruel treatment.

After trial, the court rendered a judgment of separation in favor of plaintiff, and it awarded to him the permanent custody of the child, "subject to the right of the defendant, Nona Parkman Willis, to visit said minor at reasonable times and places and to have said minor visit her at reasonable times and places." Also, there

was judgment in reconvention in defendant's favor for $100, being for attorney's fees and court costs expended in the previous separation action instituted by her.

Defendant appealed, complaining only of that part of the judgment which rejected her demands for the custody of the minor and for alimony for the child's support.

At the commencement of the trial, counsel for the litigants placed in the record a stipulation that the granting of a decree of separation to the plaintiff would provide him no advantage respecting the issue of the awarding of the child's custody, as to which both parties entered the case on an equal basis. Thus, by that agreement, plaintiff sought to waive any superior right that he might have had under Revised Civil Code Article 157, as amended by Acts No. 38 of 1921 and No. 74 of 1924, which recites in part:

"In all cases of separation and divorce the children shall be placed under the care of the party who shall have obtained the separation or divorce unless the judge shall, for the greater advantage of the children, order that some or all of them shall be entrusted to the care of the other party. * * *"

Irrespective of a stipulation of that kind, in granting custody in separation or divorce proceedings consideration is always given to the welfare and best interest of the child involved. On this point this court in Black v. Black, 205 La. 861, 18 So.2d 321, 322, in explaining our award of the custody of two girl children (ages seven and eleven respectively) to their mother and our annullment of the district court's decree favoring their father, offered the following comment:

"Under the provisions of the code article (157), as amended, the custody of children whose parents have been legally separated or divorced is left largely to the discretion of the trial judge under the circumstances shown to exist when he is called upon to act. This discretion, however, is not unlimited, but is subject to review and control by this Court.

"Where this Court is unable to concur in the conclusion reached by the trial judge that it is for the greater advantage of the children they should be entrusted to the care of the father rather than the care of the mother, the mother is entitled to have the decree annulled and the custody of the children awarded to her. Brewton v. Brewton, 159 La. 251, 105 So. 307; Higginbotham v. Lofton, 183 La. 489, 164 So. 255.

"We have great respect for the opinion of the trial judge, but we think that he erred in awarding the custody of the children to Mr. Black under the facts of this case.

*     *     *     *     *     *

"The paramount consideration in determining to whom the custody of a child should be granted after a divorce is the welfare and best interest of the child. This is the rule laid down by Article 157 of the Civil Code, as amended, which has been followed consistently by this Court, in its decisions.

"The age and sex of the child are important considerations, and the preference is always given to the mother who is not shown to be unsuitable therefor in awarding custody of children, especially girls. Brewton v. Brewton, 159 La. 251, 105 So. 307; Newson v. Newson, 176 La. 694, 146 So. 472; Kammer v. Reed, 176 La. 1091, 147 So. 357; Higginbotham v. Lofton, 183 La. 489, 164 So. 255; Brupbacher v. Brupbacher, 192 La. 219, 187 So. 555; Hattier v. Martinez, 195 La. 473, 197 So. 146."

In the more recent case of White v. Broussard, 206 La. 25, 18 So.2d 641, 642, we observed that through the amending of Civil Code Article 157 by the adoption of Act No. 38 of 1921, our "lawmakers long ago very sagaciously turned from the antiquated theory of punishing the party cast in a divorce proceeding to the far more important consideration of the welfare of those children that are unfortunately and unhappily swept along in the turbulent wake of dissolved marriages * * *." Further, in the opinion of that case, we cited approvingly numerous decisions of this court, including Black v. Black, and said:

"In applying this provision, the courts have consistently held that the right of the mother to the custody of the minor child is paramount to that of the father, unless, in his discretion, the trial judge concludes it is for the greater advantage of the child that it be entrusted to the care of the father, which conclusion is, of course, subject to review by us. * * *.

"We do not know what prompted the trial judge to award the custody of this child to the plaintiff, for we do not have his appreciation of the evidence in written reasons for judgment. A careful study and analysis of all of the cases on this subject, however, reveals that this court has consistently awarded the custody of a minor child to the mother unless she is found to be morally unfit or unless, as has been the occasion in very exceptional cases, the mother is incapable of taking care of the child."

The effect of our present jurisprudence with respect to the custody of children of tender age in a dispute between the mother and father, as is disclosed by the quoted extracts, is that the mother is preferred where she is a person of good moral character and can suitably and properly care for them. Accordingly, under that doctrine, the defendant herein is entitled to the custody of her eleven year old daughter, unless it appears from the evidence that she is morally unfit or that she is incapable of taking care of the child.

For a number of years prior to defendant's abandonment of plaintiff on September 6, 1944, the litigants lived together as husband and wife on a 40-acre tract owned by them and located several miles from the City of Ruston. There they engaged in farming on a small scale, raising principally cotton and corn. Also produced were some milk, butter, eggs, and vegetables, most of which they exchanged for needed groceries. In the production of these various commodities the labor of each was required and furnished. Besides working with his wife on the farm, plaintiff occasionally obtained employment else-

where as a carpenter, in the interest of which he departed from his home at five o'clock in the morning and returned about seven in the evening. The average yearly income from the joint efforts of both the husband and wife was between $600 and $800.

Immediately after defendant abandoned plaintiff, the latter sold the farm (the matrimonial domicile) and established his residence at the home of his brother, A. M. Willis, about three miles distant, taking with him the minor child, Mary Emma Willis. The brother's family consists of a wife and two daughters, ages seven and thirteen respectively. In the house that they occupy, which has a sleeping porch and four rooms, the brother and his wife use the sleeping porch, the three children sleep in the front room in the same bed, and plaintiff has a room to himself.

Defendant, since the abandonment, has been living with her mother and father, Mr. and Mrs. J. S. Parkman. In their home, which is located a few miles away and is a six room house, she proposes to keep her child if custody is awarded to her.

With reference to the question of the moral fitness of the defendant, the witnesses for both sides testified unequivocally that she is a person of good character. Among those so testifying was the pastor of the church, in which the husband and wife held membership and each taught a Sunday School class, he stating when asked if he ever heard anything derogatory to her character, that " * * * all been good on both sides and they both had been

working there and I thought of them as my good church members." The district judge, in refusing to hear some of the witnesses offered to prove defendant's moral fitness, commented that "this woman's character hasn't ever been questioned and besides the evidence we have has certainly established her good character." But certainly conclusive on this point is the following testimony of plaintiff himself:

"Q. All right you married a good woman didn't you? A. Yes.

"Q. She is still a good woman isn't she? A. She is.

"Q. She never committed adultery that you know of has she? A. No.

"Q. She doesn't drink? A. No sir.

"Q. She doesn't smoke cigarettes? A. No sir.

"Q. She is a good woman? A. So far as I know."

■ Since the good moral character of the defendant has been conclusively established there remains to be determined only the question of whether she is capable of properly caring for the minor. Plaintiff maintains that she is not capable, suggesting first that she has lost interest in the welfare of the child. This suggestion is not substantiated by the record. True, she instructed the child to go with the father when the abandonment occurred. But that, it appears, was only a temporary arrangement, for, as explained by the minister of the church of which both were members, "she stated that it was agreeable with her that the child go with its father until he

was settled at least, until he had time to more or less get over the excitement and shock and upset of this." On several occasions, following the separation, she sought to enjoy the company of the child, at one time carrying it from school to her home, and at another, while this suit was pending, obtaining an order of court to permit her taking it to the State Fair in Shreveport.

■ Next, plaintiff contends that the home of the minor's maternal grandparents (Mr. and Mrs. J. S. Parkman), in which defendant proposes to keep the child, is an improper place. In support of this contention there was suffered in evidence a certificate of the Clerk of the Ruston City Court showing that Mr. Parkman was convicted of being drunk on two occasions—March 15, 1943, and October 2, 1944 (more than one and one-half years apart)—and for each offense he was sentenced to pay a fine of $7.50 or serve fifteen days in jail. It is not shown, however, that such person is an habitual drunkard or that he was ever intoxicated at home. In fact the record is barren of evidence going to show that intemperance in the Parkman home was indulged in by any one at any time.

Also relied on by plaintiff is a certificate reciting that Tommy Parkman, brother of defendant, was charged in the Ruston City Court on June 23, 1944, with the offense of malicious mischief and that he was turned over to the Federal Parole Board of Texas. But it does not appear that the brother was living at the Parkman home at the time or that he was ever convicted of the named offense. Nor is there anything in the record indicating the nature of his difficulty in Texas.

On the other hand, in substantiation of defendant's assertion that the Parkman home is a fit place in which to keep the child, the evidence discloses that Mr. and Mrs. Parkman successfully reared to maturity in their home nine children born of their marriage and several who were orphans. With the possible exception of Tommy Parkman, not one of these has ever been involved in any criminal difficulty and all are recognized as good citizens.

Defendant, so she testified, does not intend to seek employment if awarded custody of the child; her father "owns his home and has a farm and he buys and sells cattle * * * he is well able to provide for us." If necessary for her to work out, however, she is an experienced practical nurse and obtains $6 a day for her services.

■ It is said in the brief of plaintiff's counsel that: "The record does not indicate the strong desire manifested by the minor to be with her father in preference to her mother. The court and counsel hesitated to pursue that field. The testimony of the minor indicates the strong preference as to the home in which the minor wanted to live." The question here is not whether the child will be as happy with her mother as she may now be with her father; it concerns solely the welfare of the minor. Moreover, as was observed in State ex rel. Sevier v. Sevier et al, 141 La. 60, 74 So. 630, 632, "the minds of children—their likes and dislikes—respond

readily to the influence of associations and environment."

■ In awarding the custody of this child to the father, the trial judge, for whose opinion we have a high regard, assigned no written reasons; hence, the basis for his decision is unknown to us. We dislike exceedingly to disturb his decision; but our duty is to review the proceedings and to correct an error if we feel that one has been committed. According to our appreciation of the evidence in the record which we have carefully and thoroughly studied, and considering the present jurisprudence that in cases of this kind the mother is preferred over the father if she is morally fit and otherwise suitable, there is no good reason for depriving this mother of the custody of her daughter of tender age and for denying to the daughter a mother's love and attention that is indisputably beneficial and unquestionably needed. We are unable to conclude that it would be to the greater advantage of the child to place her in the home of the father's brother where during the day while the father is at work, she would be under the supervision of an aunt by marriage (who has two children of her own to care for) and during the night she would sleep with two other children in one bed. To us it seems that the child's interest and welfare would be better served by affording her the loving care, attention and protection of her own mother.

■ Of course, a decree awarding custody of a child is not conclusive in the sense that it can never be changed. Thus, in the future, in a proper proceeding, the mother can be denied the enjoyment and pleasure of her child if she proves unworthy of it.

For the reasons assigned the judgment appealed from is annulled and set aside insofar as it awards the custody of the minor child, Mary Emma Willis, to the plaintiff father, John T. Willis, and it is now ordered that the permanent care, custody and control of said child be granted to the defendant mother, Mrs. Nona Parkman Willis, subject to the right of the plaintiff, at reasonable times and places, to visit the child and to have the child visit him. It is further ordered that plaintiff be condemned to pay to defendant for the support of the child the sum of $25 per month, beginning on the date that this decree becomes final, and to pay also all costs of this proceeding. In all other respects the judgment is affirmed.